OPINION OF THE COURT
Chief Judge Cooke.
The issue on this appeal is whether the City of New York is authorized by subdivision b of section 480 of the Retirement and Social Security Law to pay only one half of an electing employee’s contribution to the optional retirement program pursuant to article 125-A of the Education Law (Education Law, §§ 6250-6256).
Petitioner has been a member of the faculty of Bronx Community College since 1963. In 1967, he elected to participate in the optional retirement program established under article 125-A and became a member of the Teachers Insurance and Annuity Association (TIAA), which operates the program. Article 125-A allows certain employees of the Board of Higher Education in the City of New York to elect to participate in the optional program as an alternative to membership in the New York City teachers’ or employees’ retirement systems (see Education Law, § 6253, subds 1, 2).
The optional program provides “for the purchase of contracts providing retirement and death benefits for or on behalf of electing employees”, which contracts are purchased through contributions by the city and employee, “to the extent authorized or required”, and are issued to and and become the property of the employee (Education Law, § 6251, subd 1). The board designates the insurer to which the contributions are to be paid and approves the form and content of contracts purchased (id., subd 2). The board is also authorized to provide for the administration of the *4 optional program and to perform or authorize performance of the functions necessary thereto (id., subd 3). The city and board are not parties to the contract purchased under the optional program and are not liable for retirement or death benefits provided through the program; such benefits are payable by the insurer under the terms of the contract (§ 6255). Contributions are governed by section 6252, which specifies that 3% of an employee’s salary shall be deducted by the comptroller as the employee contribution, except that the employee contribution shall be assumed by the city “during such period as either section seventy-a of the retirement and social security law or section B3-36.1 or section B20-41.1 of the administrative code of the city of New York provides that the contribution of any member of the New York city employees’ retirement system or the New York city teachers’ retirement system in the employ of the city shall be reduced by at least eight percentum of his compensation” (Education Law, § 6252, subd 2). The final proviso to subdivision 2 of section 6252 provides that “notwithstanding any of the foregoing provisions of this subdivision to the contrary”, the city shall make the employee contribution for the fiscal year beginning July 1,1972 and ending June 30, 1973.
Until July, 1977, the city paid the 3% employee contribution. At that time, however, the comptroller began deducting from petitioner’s salary the employee contribution at the rate of 1.5% of his salary. The city took the position that the reduction by one half of its obligation to pay the employee contribution was required by subdivision b of section 480 of the Retirement and Social Security Law, which, although extending to 1981 any program set to expire in 1974 “under which an employer in a public retirement system funded by the state or one of its political subdivisions assumes all or part of the contribution which would otherwise be made by its employees toward retirement”, reduces by one half the rate of contribution “assumed by an employer in any of the public retirement systems funded and maintained by a city” for the period January 1, 1976 to July 1,1981.
When the city declined petitioner’s request to cease withholding the portion of his salary, he commenced this article *5 78 proceeding, alleging that the deduction was unauthorized in that the optional program was privately operated and thus not within the terms of subdivision b of section 480. Following respondents’ unsuccessful cross motion to dismiss on the grounds of laches and Statute of Limitations, and after service of an answer, Special Term granted the petition on the ground that the optional program was a private retirement system to which subdivision b Spf section 480 did not apply. The Appellate Division affirmed and granted leave to appeal to this court. For the reasons that follow, there should be a reversal.
Respondents urge that the optional retirement program, though privately operated by TIAA, is a public retirement system within the meaning of subdivision b of section 480. In support, respondents point to the history of subdivision 2 of section 6252 and subdivision b of section 480 and to the absence of other authority for the city to assume any part of the employee contribution. To the contrary, petitioner, asserting that the optional retirement program is a private system, maintains that subdivision b of section 480 is inapplicable because it applies only to public retirement systems. Since there is no doubt that a private retirement system is beyond the reach of subdivision b of section 480, the inquiry is whether the optional program is a private or public system within the meaning of the statute. It is concluded that the optional program is a public retirement system for purposes of subdivision b of section 480.
;
It is recognized that the optional retirement program created by article 125-A has certain attributes that are of a private nature. The program provides that retirement and death benefits are payable from a private source, the insurer with whom the employee contracts, rather than the city. Additionally, TIAA, a private entity, operates the program. These aspects of the program, however, cannot and do not negate the aspects of the program that connect it to the public and bring it within the reach of subdivision b of section 480.
Of telling significance is that the program is offered by a public entity, is available to public employees and is funded *6 by contributions made by the public employer. Moreover, the board is charged with designating the insurer and approving the form and content of the contracts under which benefits are paid to electing employees. Authority to administer the program is vested in the board, which may perform or authorize performance of functions necessary to administration. Quite simply, the program operates under public authority for the benefit of public employees. The program is an alternative to other established public retirement systems and is merely another means for the city to provide retirement benefits to its employees. That the alternative relieves the city of certain burdens borne under then existing retirement systems does not mean the program is any less a public retirement system for purposes of subdivision b of section 480. Thus, the optional program does come within the language of subdivision b of section 480.
Additionally, the history and operation of subdivision 2 of section 6252 and subdivision b of section 480 show that the optional program was intended to benefit from the extension provided by subdivision b of section 480. The optional program originally obligated the city to assume the 3 % employee contribution only during the periods when the contribution of any member of the city employees’ or teachers’ retirement systems was being reduced by 8% [1] 1965, ch 1028). In 1970, apparently in anticipation of a decrease in the reduction of employee contributions for certain members of the teachers’ retirement system and to assure continued payment by the city of the employee contribution for members of the optional program (see NY Legis Ann, 1970, p 189), a clause was added to subdivision 2 of section 6252 to provide that the city assume the employee contribution for fiscal year July 1,1970 to June 30,1971 without regard to the percentage reduction of contributions for members of the employees’ and teachers’ retirement systems (Education Law, § 6252, subd 2, as amd by L 1970, ch 771, § 2). That clause was twice amended to extend the city’s obligation for fiscal years 1971-1972 (Education Law, § 6252, subd 2, as amd by L1971, ch 611, § 2) and 1972-1973 (Education Law, § 6252, subd 2, as amd by L 1972, ch 375, § 2). During the 1970-1973 period, the rate of reduction in em *7 ployee contributions did not reach 8% / Thus, as of June 30, 1973, nothing in subdivision 2 of section 6252 of the Education Law specifically authorized or obligated the city to assume the 3 % employee contribution.
The city’s obligation, however, was indeed continued beyond 1973. By section 2 of chapter 383 of the Laws of 1973, the Legislature introduced the predecessor to subdivision b of section 480, providing that “[a]ny program under which an employer in a public retirement system funded by the state or political subdivision thereof assumes all or part of the contribution which would be otherwise made by its employees toward retirement, which expires on or before August thirty-first, nineteen hundred seventy-three, shall be extended until August thirty-first, nineteen hundred seventy-three.” In the Extraordinary Session of that year, the Legislature amended section 2 of chapter 383 to extend to June 30, 1974 the programs under which a public employer assumed employee contributions (L 1973, ch 1046, §66). Significantly, the fiscal note to this legislation, summitted pursuant to section 50 of the Legislative Law, expressly points to the costs to New York City of extending the optional retirement program (see Fiscal Note, Part V, reprinted in McKinney’s Session Laws of NY, 1973, pp 1957,1959). The Legislature again extended such programs until July 1, 1976, adding subdivision b of section 480 to the Retirement and Social Security Law (L 1974, ch 510, § 24).1 [2]
In 1975, at the height of the city’s fiscal crisis, the Legislature amended subdivision b of section 480, by adding a *8 clause that from January to June, 1976 the rate of contribution “assumed by an employer in any of the public retirement systems funded and maintained by a city, shall be one-half of the rate of such contribution assumed by such employer for the immediately preceding payroll period” (Retirement and Social Security Law, § 480, subd b, as added by L 1974, ch 510, § 24, as amd by L 1975, ch 892, § 1). Through subsequent amendments, the programs under which an employer in a public retirement system assumed employee contributions and the city’s modified obligations were extended to July 1,1981 (Retirement and Social Security Law, § 480, subd b, as added by L 1974, ch 510, § 24, as amd by L 1975, ch 892, § 1, as amd by L 1976, ch 491, § 2, as amd by L 1977, ch 347, § 1, as amd by L 1978, ch 464, § 7, as amd by L 1979, ch 321, § 7). Thus, the city’s obligation to assume employee contributions under the optional program was extended by subdivision b of section 480 and its predecessors, but was modified by requiring the city to assume only one half of the employee contribution.
In sum, the statutory development in subdivision 2 of section 6252 of the Education Law and subdivision b of section 480 of the Retirement and Social Security Law lead to the conclusion that the city lawfully deducted from petitioner’s salary the employee contribution at a rate of 1.5% of his salary. The term “public retirement system” under subdivision b of section 480 has not been statutorily defined to exclude the optional program from its scope and the indicia of a public system evident in the optional program and the language and history of subdivision b of section 480 indicate that members of the program indeed were to benefit from the extension. Nothing has been brought to the court’s attention that compels a different conclusion.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. During the 1970-1973 period, the rate of reduction in employee contributions authorized by section B3-36.1 of the New York City Administrative Code did not reach 8% (see Administrative Code of City of New York, § B3-36.1, subd m, par 1, els [i]-[k] ; par 2, els [h]-[j]). Under section B20-41.1 of the code, for fiscal year 1970-1971, the authorized rate of reduction in employee contributions was 5%, contingent upon passage of certain legislation, or 8% in the event the legislation failed (Administrative Code, § B20-41.1, subds m, n), and for fiscal years 1971-1972 and 1972-1973 the rate was 5% (id., subds o, p). The Administrative Code does not itself provide for reduction beyond 1973 and the rate last authorized by sections B3-36.1 or B20-41.1 did not reach 8%.

. Here too, the fiscal note points to the costs to the city of extending increased take-home pay provisions (see Fiscal Note, Part III, reprinted in McKinney’s Session Laws of NY, 1974, pp 681, 683).